U.S. DISTRICT COURT
FILED AT WHEELING, WV

JUL 27 2007

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**WINCHESTER & WESTERN RAILROAD,**

    Plaintiff,

v.

**CITY OF MARTINSBURG,**

    Defendant.

CIVIL ACTION NO. 3:06-CV-84
(BAILEY)

## MEMORANDUM ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This civil action was filed by Winchester & Western Railroad against the City of Martinsburg seeking declaratory judgment that two Martinsburg city ordinances may not be enforced against the Railroad inasmuch as the same are preempted by federal law. The parties have agreed that there is no issue of fact present and that the issues presented in this case are issues of law. Pending before this Court are cross-motions for summary judgment filed by Winchester & Western Railroad (Doc. 33) and the City of Martinsburg (Doc. 37).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in part, that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

1

The party moving for summary judgment is "entitled to judgment as a matter of law" when there is "no genuine issue as to any material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986) (*quoting* F.R.C.P. 56(c)).

## Factual Background

1.  The plaintiff, Winchester & Western Railroad ("the Railroad", is a Virginia corporation having its principal place of business in Winchester, Virginia.

2.  The defendant, City of Martinsburg, is a municipal corporation chartered in the State of West Virginia and located in Berkeley County, West Virginia.

3.  The plaintiff is a common carrier railroad, which owns, in fee simple, a railroad right of way and tracks that pass through the City of Martinsburg.

4.  Pursuant to Section 1711.01 of the Codified Ordinances of Martinsburg, West Virginia, the International Property Maintenance Code 2000 ("IPMC") was adopted in its entirety on May 8, 2003, by the Martinsburg City Council.

5.  Section 302.4 of the IPMC, as adopted by the City of Martinsburg, states as follows:

> **302.4 Weeds.** All premises and exterior property shall be maintained free from weeds or plant growth in excess of ten inches (254 mm). All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.

6.  Section 305.1 of the IPMC, as adopted by the City of Martinsburg, states as follows:

> **305.1 Accumulation of rubbish or garbage.** All exterior property and premises, and the interior of every structure, shall be free from any accumulation of rubbish or garbage.

2

7. The City of Martinsburg has issues citations against the Railroad for alleged violations of both sections 302.4 and 305.1.

8. Some or all of the trash along the Railroad's right of way is from sources other than the Railroad.

9. The parties have agreed that the above sections of the IPMC are ordinances relating to railroad safety.

## Applicable Law

The Railroad contends that enforcement of the Martinsburg ordinances cited above is preempted by Federal law.

1. In *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 368-69 (1986), the United States Supreme Court set forth the various tests for preemption:

The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.*, 430 U.S. 519 (1977), when there is outright or actual conflict between federal and state law, *e.g., Free v. Bland*, 369 U.S. 663 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law,

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz*, 312 U.S. 52 (1941). Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation. *Fidelity Federal Savings & Loan Assn. v. De la Cuesta*, 458 U.S. 141 (1982); *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691 (1984).

2. "Where a state statute conflicts with, or frustrates, federal law, the former must give way. U.S. Const., Art. VI, cl. 2; *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)." *CSX Transportation v. Easterwood*, 507 U.S. 658, 663 (1993).

3. "Evidence of pre-emptive purpose is sought in the text and structure of the statute at issue. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983). If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily provides the best evidence of Congress' pre-emptive intent." *Id.*, at 664.

4. The Federal Railroad Safety Act ("FRSA") was enacted in 1970 "to promote safety in all areas of railroad operations . . .." 45 U.S.C. § 421.

5. The Secretary of Transportation is given broad powers to "prescribe, as necessary, appropriate rules, regulations, orders and standards for all areas of railroad safety." 45 U.S.C. § 431(a).

6. "The pre-emptive effect of these regulations is governed by § 434, which contains express savings and pre-emption clauses." *Easterwood, supra,* at 662.

7. Section 434 of the FRSA provides as follows:

§ 434. National uniformity of laws, rules, regulations, orders, and standards relating to railroad safety; State regulation

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

8. "The Railroad Safety Act is the primary source of legislation dealing with the various railroad safety problems. The legislative history indicates that Congress was wary of the role of the states in rail safety. The House report stated that '[t]he committee does not believe that safety in the Nation's railroads would be advanced sufficiently by subjecting the national rail system to a variety of enforcement in 50 different judicial and administrative systems.' H.Rep. No. 1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4104, 4109 (hereinafter House Report). The committee

5

also noted that 'where the federal government has authority, with respect to rail safety, it preempts the field.' House Report at 4108 (emphasis added)." *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548, 1552 (11th Cir. 1991), affirmed sub nom. *CSX Transportation v. Easterwood*, 507 U.S. 658, 663 (1993).

9. "The Railroad Safety Act was the outgrowth of a report from a task force on railroad safety. The task force was primarily concerned with grade crossing accidents and derailments. See House Report, Appendix F, 4125, 4126-27. The task force noted the problems inherent in a hodgepodge of state safety regulations and concluded that 'railroad safety ... requires a more comprehensive national approach.' *Id.* at 4127." *Id.*

10. "When Congress enacts a statute which by its language expressly provides that states cannot legislate in a given subject area, preemption is clear. *Fidelity Federal Savings and Loan Association v. De La Cuesta*, 458 U.S. 141 (1982). When statutory language is less clear, state law will be adjudged preempted if federal law so pervades a given field as to evince a Congressional intent to exclusively occupy the field. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)." *Consolidated Rail Corp. v. Smith*, 664 F.Supp. 1228, 1236 (N.D. Ind. 1987).

11. "Courts have interpreted section 434 of the FRSA, when read together with the Congressional statement of statutory purpose in section 421 of the Act, as a declaration of Congressional intent to preempt state law in the entire area of railroad safety. In *National Association of Regulatory Utility Commissioners v. Coleman*, 542 F.2d 11 (3rd Cir.1976), the Association challenged the Federal Railroad Administration's right to preempt state accident reporting requirements. After reviewing the language of

section 434, the court stated: 'We believe these statutory provisions evince, as the district court determined, a "total preemptive intent".'" *Id.* at 13. Other courts have agreed. ***Donelon v. New Orleans Terminal Co.***, 474 F.2d 1108 (5th Cir.1973), *cert. denied*, 414 U.S. 855 (1973); ***Atchinson, Topeka & Santa Fe Railroad Co. v. Illinois Commerce Comm.***, 453 F.Supp. 920 (N.D.Ill.1977). **Thus, a non-federal railroad safety law will be preempted unless expressly authorized under the FRSA.**" *Id.* (emphasis added).

12. "Congress expressly intended that the FRSA preempt all railroad safety legislation except *state law* governing an area in which the Secretary of Transportation has not issued a regulation or order and *state law* is more strict than federal regulations when necessary to address local problems. 49 U.S.C. § 20106; *see also **Norfolk & Western Ry. v. Public Utils. Comm'n of Ohio***, 926 F.2d 567, 570 (6th Cir.1991) (explaining the two exceptions)." ***CSX Transportation, Inc. v. City of Plymouth***, 86 F.3d 626 (6th Cir. 1996) (emphasis in original).

## Discussion

The first ordinance of which the Railroad complains is § 302.4, the "weed" ordinance. The City has admitted that this is an ordinance related to railroad safety. It is clear from the foregoing cases that the FRSA has preempted all railroad safety legislation except for *state* laws in two defined circumstances. The Martinsburg ordinance is not a state law and is preempted by the FRSA. As used in the FRSA, the term "state law" does not include municipal ordinaces. ***CSX Transportation, Inc. v. City of Plymouth***, 86 F.3d 626, 628 (6th Cir. 1996); ***Donelon v. New Orleans Terminal Co.***, 474 F.2d 1108 (5th Cir.), *cert. denied*, 414 U.S. 855 (1973); ***Johnson v. Southern Railway Corp.***, 654 F.Supp. 121

7

(W.D. N.C. 1987); *Consolidated Rail Corp. v. Smith*, 664 F.Supp. 1228 (N.D. Ind. 1987); *Sisk v. National Railroad Passenger Corp.*, 647 F.Supp. 861 (D. Kan. 1986); *Grand Trunk W. R.R. v. City of Fenton*, 439 Mich. 240, 482 N.W.2d 706 (1992).

Such a holding is consistent with the intent of Congress. "Congress was concerned that the existence of fifty separate regulatory systems in the fifty states would undermine safety. If so, separate regulation by every city, village, township, or hamlet along the mainline would undermine safety infinitely more." *Consolidated Rail Corp. v. Smith*, 664 F.Supp. 1228, 1238 (N.D. Ind. 1987).

Even if a municipality could fall within the ambit of the term "state," it is this Court's opinion that the "weed" ordinance would still be preempted by the FRSA. The Secretary of Transportation has, in fact, issued a specific regulation that governs vegetation on railroad property. 49 C.F.R. § 213.37 provides:

Vegetation on railroad property which is on or immediately adjacent to roadbed must be controlled so that it does not-

(a) Become a fire hazard to track-carrying structures;

(b) Obstruct visibility of railroad signs and signs and signals:

(1) Along the right-of-way, and

(2) At highway-rail crossings; (This paragraph (b)(2) is applicable September 21, 1999.)

(c) Interfere with railroad employees performing normal trackside duties;

(d) Prevent proper functioning of signal and communication lines; or

(e) Prevent railroad employees from visually inspecting moving equipment from their

8

normal duty stations.

The City argues that inasmuch as the above regulation governs vegetation on or immediately adjacent to the railroad roadbed, it should be free to regulate areas which may fall outside the area that is "immediately adjacent." (Doc. 37, p. 15). This Court does not agree. The Secretary of Transportation considered vegetation to be a safety issue. The Secretary also determined that it was not necessary to regulate vegetation outside the roadbed or area immediately adjacent thereto. In so determining, the Secretary has made an implicit determination that there is no need for vegetation to be controlled outside that specific area. A municipality cannot overrule that decision.

"The United States Supreme Court has recognized a form of negative preemption when a federal agency has determined that no regulation is appropriate. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151 (1978). In *Ray*, the Court held that "'where failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute," States are not permitted to use their police power to enact such regulation.' *Id.* (citation omitted)." *Norfolk & Western Ry. Co. v. Public Utilities Com'n. of Ohio*, 926 F.2d 567 (6th Cir. 1991).

As noted in *Michigan Southern R.R. Co. v. City of Kendallville*, 251 F.3d 1152 (7th Cir. 2001):

> the railroad's argument that the ordinance has an impact on safety is not entirely farfetched. The railroad says that if it were required to maintain its right-of way to 'front yard' standards set out in the ordinance, it would be

inviting to trespassers- pedestrians, bicycles, motorcycles, snowmobiles- all of which present safety problems for the railroad. In other words, having the right-of-way a little less than inviting is a good thing. Viewed from that angle, the ordinance could affect safety. In **[CSX Transportation v.] City of Plymouth** the court rejected an argument that an ordinance prohibiting trains from obstructing a crossing for longer than 5 minutes was a measure designed to promote the general welfare of its residents and was not a safety measure. The court found that the ordinance was, in fact, related to railroad safety. We think the existence of a vegetation control regulation-that is, § 213.37-is solid evidence that the Secretary thinks vegetation control is a safety issue. See also, e.g., **Missouri Pacific R. v. Railroad Comm'n of Texas**, 833 F.2d 570 (5th Cir.1987). We do not disagree.

251 F.3d at 1155.

The Court is aware of three Federal cases which disagree with this position: **Missouri Pacific**, supra, **Easterwood v. CSX Transportation, Inc.**, supra, and **Bowman v. Norfolk Southern Railway Co.**, 832 F.Supp. 1014.[1] This Court, however, is more convinced of the correctness of the rationale of the more recent **Kendallville** decision, especially the fact that a contrary decision would frustrate Congress' purpose of uniform national regulation. If municipalities along a rail line are permitted to enforce such

---

[1]While both **Easterwood** and **Bowman** were affirmed on appeal (**CSX Transportation v. Easterwood**, 507 U.S. 658, 663 (1993) and **Bowman v. Norfolk Southern Railway Co.**, 66 F.3d 315 (Table), 1995 WL 550079 (4th Cir. 1995) (unpublished)), neither of these decisions addressed the vegetation issue.

ordinances against the railroads, the railroads could be subject to thousands of regulatory schemes. The Court would also note that the contrary decisions dealt with *state* regulations (***Missouri Pacific***) and *state* tort law (***Easterwood*** and ***Bowman***).

This Court further believes that allowing such ordinances could result in the hodge-podge of regulations that the FRSA was intended to eliminate. Requiring a railroad to control weeds to the extent required under the Martinsburg ordinance over the full length of its right of way would create an obviously unreasonable burden on interstate commerce.

The same analysis invalidates ordinance § 305.1, regarding the removal of trash along the railroad right of way. First, inasmuch as the City has agreed that the ordinance is one relating to railroad safety, such an ordinance may not be applied by a municipality. Second, while the Secretary of Transportation has not issued a regulation, a requirement that railroads be responsible for removing trash from their tracks, especially trash placed there by others, would constitute an impermissible burden on interstate commerce.

Another justification for this decision is found in Article XI, Section 9 of the **Constitution of West Virginia**, which grants railroads the status of public highways. West Virginia Code § 17-1-3 provides, in part, that the "words or terms 'road', 'public road,' or 'highway' shall be deemed to include, but shall not be limited to, the right-of-way, roadbed and all necessary culverts, sluices, drains, ditches, waterways, embankments, slopes, retaining walls, bridges, tunnels and viaducts necessary for the maintenance of travel . . .."

A municipality does not have the authority to regulate the West Virginia Department of Highways in the maintenance of state roads. Under the West Virginia Constitution,

railroads enjoy the status of public highways. Accordingly, under state law, a municipality may not regulate a railroad in the maintenance of its right of way.

## Conclusion

For the reasons stated above, this Court finds and declares that the City of Martinsburg may not enforce §§ 302.4 and 305.1 against the plaintiff Railroad.

Accordingly, the plaintiff's Motion for Summary Judgment (Doc. 33) is **GRANTED** and defendant's Motion for Summary Judgment (Doc. 37) is hereby **DENIED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** July 27, 2007.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE